# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re*: **M.M.-1, B.M., and A.D.**

**No. 17-0484** (Mingo County 16-JA-46, 16-JA-47, & 16-JA-48)

**FILED**

**November 22, 2017**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother M.M.-2, by counsel Diana Carter Wiedel, appeals the Circuit Court of Mingo County's April 27, 2017, order terminating her parental rights to M.M.-1, B.M., and A.D.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Marsha Webb-Rumora, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in finding probable cause because the evidence to support the emergency removal of her children was insufficient and in denying her motions for an improvement period.[2]

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In July of 2016, the DHHR filed an abuse and neglect petition against petitioner. The petition alleged that the DHHR received a referral that petitioner tested positive for the drug Subutex upon the birth of twins M.M.-1 and B.M, although petitioner did have a prescription for that drug at that time. The referral also alleged that the father of the twins, T.M., was criminally charged for the death of a one-month-old child in 2011. Further, another child passed away at four months of age in the father's care in 2010. The cause of that child's death was Sudden Infant Death Syndrome.[3] The referral reported that both petitioner and the father had quick

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990). Additionally, because one child and petitioner share the same initials, we will refer to them as M.M.-1 and M.M.-2, respectively, throughout this memorandum decision.

[2]On appeal, petitioner does not raise a specific assignment of error regarding the circuit court's termination of parental rights.

1

tempers and threw hospital staff out of the room for asking questions. The person who made the referral was concerned for the safety of the twin infants, especially because of petitioner's drug use and because the parents had a fifteen-month-old child at home.

Two Child Protective Services ("CPS") workers responded to the referral by going to the hospital to see the twin infants. One CPS worker reported that the infants were showing signs of withdrawal--poor sucking, lack of eating, and sneezing. She also reported that petitioner and the father were acting "chaotic" and angry with the staff, and that petitioner had been on Subutex for seven years, and had a history of heroin and crack cocaine abuse.

The circuit court held a preliminary hearing in July of 2016 at which the circuit court found probable cause to believe that petitioner abused and neglected the children based upon the fact that the infants were born affected by the drug Subutex and because the father was on probation after having pled guilty to neglect causing the death of a child, which created aggravated circumstances. In September of 2016, the circuit court held an adjudicatory hearing wherein petitioner moved for a post-adjudicatory improvement period. The circuit court found that petitioner had numerous diluted drug screens, which are considered failed drug screens, and denied petitioner's motion. The circuit court found by clear and convincing evidence that petitioner abused and neglected the children.

In April of 2017, the circuit court held a dispositional hearing. The father of M.M.-1 and B.M. voluntarily relinquished his parental rights. Petitioner again moved for a post-dispositional improvement period and argued that she was taking the steps necessary to have her children returned to her. The DHHR presented testimony that petitioner tested positive for Subutex without a prescription for that drug. The DHHR further presented testimony that the mother did not fully cooperate with services, and that the service provider was unable to provide services at petitioner's home. The service provider testified that petitioner did not benefit from services enough to be trusted with her children. Conversely, petitioner testified that she benefitted from services and that she did not believe that she was a drug user or that she needed rehabilitation. The DHHR recommended termination of petitioner's parental rights based on her continued drug use and noncompliance with services. Ultimately, the circuit court found that petitioner was unable or unwilling to correct the conditions of abuse and neglect and that there was no reasonable likelihood that she would correct the conditions in the near future. The circuit court denied petitioner's motion for a post-dispositional improvement period and ultimately terminated her parental rights in its April 27, 2017, order.[4] It is from the dispositional order that petitioner appeals.

---

[3]There is no indication from the record on appeal that the mother has any relation to the two children that passed away under T.M.'s care.

[4]In addition to the termination of petitioner's parental rights, T.M., the father of M.M.-1 and B.M. voluntarily relinquished his parental rights. The unknown father of A.D.'s parental rights were terminated below. According to the guardian and the DHHR, all three children are currently placed with a family member and home studies of other family members are being conducted with regard to permanent placement.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, the Court finds no error in the proceedings below.

First, petitioner argues that the circuit court erred in finding probable cause to support the children's emergency removal at the preliminary hearing because the evidence indicated that her home was appropriate and that she was enrolled in a legal Subutex program and was compliant with the program. West Virginia Code § 49-1-201 provides that "'imminent danger to the physical well-being of the child' means an emergency situation in which the welfare or the life of the child is threatened." West Virginia Code § 49-1-201 further provides that these conditions may include an emergency situation where there is reasonable cause to believe that the parent's drug or alcohol use, or use of a controlled substance "has impaired his or her parenting skills to a degree as to pose an imminent risk to a child's health or safety[.]"

Here, petitioner gave birth to twins who were affected by the drug Subutex. Petitioner admitted to using the drug for the past seven years in order for her to avoid abusing crack cocaine and heroin. Although petitioner claimed to be using the drug lawfully, the evidence later established that she abused the drug without a valid prescription. The record on appeal shows that the twin infants were born with symptoms of withdrawal including poor sucking, lack of eating, and sneezing. Additionally, the father of the children had a history of two separate incidents where infants passed away while under his care. Yet the mother remained married to him and they resided in the same home, thereby exposing the children to the dangers he posed. Based on this evidence, the circuit court did not err in finding probable cause that the children were in imminent danger of abuse and neglect. Accordingly, petitioner is not entitled to relief in this regard.

Next, petitioner argues that she should have been granted an improvement period. Petitioner moved for improvement periods at the adjudicatory hearing and at the dispositional hearing. In support of her argument, petitioner asserts that she complied with all of the services offered throughout the proceedings and completed a short in-patient rehabilitation program in January of 2017. However, in order to obtain a post-adjudicatory improvement period or dispositional improvement period, West Virginia Code §§ 49-4-610(2)(B) and (3)(B) require that

the parent "demonstrate[], by clear and convincing evidence, that [the parent] is likely to fully participate in an improvement period[.]" Further, we have often noted that the decision to grant or deny an improvement period rests in the sound discretion of the circuit court. *See In re: M.M.*, 236 W.Va. 108, 115, 778 S.E.2d 338, 345 (2015) (holding that "West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period"); Syl. Pt. 6, in part, *In re Katie S.*, 198 W.Va. 79, 479 S.E.2d 589 (1996) (holding that "[i]t is within the court's discretion to grant an improvement period within the applicable statutory requirements").

Here, petitioner failed to prove by clear and convincing evidence that she was likely to substantially comply with the terms and conditions of a post-adjudicatory or dispositional improvement period. According to the record on appeal, petitioner failed to cooperate with services, failed to benefit from services, and failed drug screens or produced diluted drug screens. Petitioner also failed to acknowledge that she had any sort of drug problem. This Court has held that

> [i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W.Va. 44, 55, 743 S.E.2d 352, 363 (2013) (quoting *In re: Charity H.*, 215 W.Va. 208, 217, 599 S.E.2d 631, 640 (2004)). Ultimately, the circuit court found that petitioner was unable or unwilling to correct the conditions of abuse and neglect and that there was no reasonable likelihood that she would correct the conditions in the near future. Based on this evidence, petitioner did not prove by clear and convincing evidence that she was likely to substantially comply with the terms and conditions of a post-adjudicatory improvement period or a post-dispositional improvement period, and, therefore, the circuit court did not err in denying petitioner's motions for such.

Lastly, this Court reminds the circuit court of its duty to establish permanency for the children. Rule 39(b) of the Rules of Procedure for Child Abuse and Neglect Proceedings requires:

> At least once every three months until permanent placement is achieved as defined in Rule 6, the court shall conduct a permanent placement review conference, requiring the multidisciplinary treatment team to attend and report as to progress and development in the case, for the purpose of reviewing the progress in the permanent placement of the child.

Further, this Court reminds the circuit court of its duty pursuant to Rule 43 of the Rules of Procedure for Child Abuse and Neglect Proceedings to find permanent placement for the children within twelve months of the date of the disposition order. As this Court has stated,

[t]he [twelve]-month period provided in Rule 43 of the West Virginia Rules of Procedures for Child Abuse and Neglect Proceedings for permanent placement of an abused and neglected child following the final dispositional order must be strictly followed except in the most extraordinary circumstances which are fully substantiated in the record.

*Cecil T.*, 228 W.Va. at 91, 717 S.E.2d at 875, Syl. Pt. 6. Moreover, this Court has stated that

[i]n determining the appropriate permanent out-of-home placement of a child under W.Va.Code § 49-6-5(a)(6) [1996] [now West Virginia Code § 49-4-604(b)(6)], the circuit court shall give priority to securing a suitable adoptive home for the child and shall consider other placement alternatives, including permanent foster care, only where the court finds that adoption would not provide custody, care, commitment, nurturing and discipline consistent with the child's best interests or where a suitable adoptive home can not be found.

Syl. Pt. 3, *State v. Michael M.*, 202 W.Va. 350, 504 S.E.2d 177 (1998). Finally, "[t]he guardian ad litem's role in abuse and neglect proceedings does not actually cease until such time as the child is placed in a permanent home." Syl. Pt. 5, *James M. v. Maynard*, 185 W.Va. 648, 408 S.E.2d 400 (1991).

For the foregoing reasons, we find no error in the decision of the circuit court, and its April 27, 2017, order is hereby affirmed.

Affirmed.

**ISSUED**: November 22, 2017

**CONCURRED IN BY**:

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker